DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Aaron C. to appellee, Lucas County Children Services ("LCCS"), and terminated the parental rights of appellant, Felicia C., the natural mother of Aaron C.
Appointed counsel, Penny H. Nasatir, has submitted a request to withdraw as counsel for appellant pursuant to Anders v.California (1967), 386 U.S. 738. In support of her request, counsel for appellant states that after carefully reviewing the record on appeal and researching the case and statutory law relating to potential issues disclosed by the record, she has been unable to discern any appealable issues. Counsel for appellant has, however, set forth the following potential assignments of error:
 "1. WHETHER THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED FINDING OF DEPENDENCY AND NEGLECT WHICH RESULTED IN AN AWARD OF PERMANENT CUSTODY TO LCCS.
 "2. WHETHER LCCS' FAILURE TO PROVIDE CASE PLAN SERVICES IN THE PRESENT CASE WAS PREJUDICIAL TO APPELLANT."
 Anders, supra and State v. Duncan (1978), 57 Ohio App.2d 93, set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In Anders, supra at 744, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
In the case before us, appointed counsel for appellant has satisfied the requirements set forth in Anders. This court notes further that appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, this court shall proceed with an examination of the potential assignments of error set forth by counsel for appellant and of the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.
On October 22, 1998, LCCS filed a complaint in dependency and neglect seeking permanent custody of Aaron C. who was born on January 17, 1992. In that complaint, appellee alleged that appellant had a history of neglect of her children and that temporary custody of Aaron and his two siblings had previously been awarded to appellee. Subsequently, Aaron was returned to appellant under the protective supervision of appellee. However, due to appellant's failure to comply with the case plan for the children, permanent custody of Aaron's siblings was awarded to appellee on August 12, 1998. The complaint further described appellant's living conditions, which exposed Aaron to gambling, drug use and drug sales, and alleged that appellant had not been sending Aaron to school regularly and had sought no medical or dental attention for him. Finally, the complaint alleged that Aaron N., Aaron C.'s father, provided no regular care or support for Aaron C. After an emergency shelter care hearing of the same day, the lower court awarded temporary custody of Aaron C. to appellee.
On January 14, 1999, the lower court proceeded with the adjudication and disposition hearings at which, despite notification, appellant did not appear. She was, however, represented by counsel. At the adjudication hearing, Tammy Tomanski, a family advocate for LCCS, testified as to her contact with appellant and Aaron C. She stated that she first became involved with the family in April 1996 when all three children were alleged to be dependent and neglected. Her job was to go into the home and encourage Felicia to take her children to their medical appointments, to maintain food in the home, to maintain the conditions in the home and to see that the children's basic medical and educational needs were being met. Felicia, however, was unable to comply, and in June 1996, all three children were removed from the home. In August 1996, Aaron C. was returned to the home but temporary custody of his siblings remained with appellee. Tomanski, therefore, continued to provide services to Felicia while Aaron was in the home. Tomanski testified that during that time, Felicia and Aaron were living in two apartments in a building on Upton Avenue in Toledo, Ohio. One of the apartments was leased by Denise C., Felicia's mother, and the apartment across the hall was leased by Cassandra C., Felicia's sister. Tomanski stated that she visited the apartments approximately once a week but was only allowed into one apartment one time. During the other home visits, Tomanski would talk to Felicia and Aaron in the hallway because Felicia told her she could not enter Denise C.'s apartment. Tomanski discussed with Felicia the importance of getting Aaron to school but Felicia responded with excuses and would not comply. In particular, Felicia would tell Tomanski that Aaron could not go to school because he was sick, but Felicia also would not take him to a doctor. As a result, Aaron missed seventy-six days of school in his kindergarten year and had to be held back. Tomanski then testified that on October 16, 1998, appellee received a referral regarding the family because Aaron had missed twenty days of school between September 1 and October 16, 1998. Accordingly, Tomanski and another LCCS caseworker went back to the Upton apartments to talk to Felicia. When they arrived at the apartments, the front door was boarded up, there was a "No Trespassing" sign on the door, the windows were all boarded up, the building was dark and there was broken glass in the hallway. Felicia and her family were the only residents of the building and Felicia told Tomanski that they had been evicted but did not have to leave until an apartment on Cherrywood was ready. Subsequently, it was determined that the apartments had been condemned. Several days later, appellee took custody of Aaron. Tomanski described Aaron's physical condition at that time as being very dirty.
At the conclusion of the adjudication hearing, the trial court found that there was clear and convincing evidence that Aaron C. was both dependent and neglected. In particular, the court noted Aaron's chronic absences from school and the family's housing conditions as factors supporting the findings. The court then proceeded to the dispositional hearing at which Ann Hodge, a caseworker for LCCS, testified.
Hodge stated that she originally became the caseworker in this case in November 1997. Although she had regular contact with Felicia, she had only spoken to Aaron N., Aaron C.'s purported father, once. Hodge testified that although Aaron N. was aware of the permanent custody proceedings, he did nothing to participate in them or in any case plan services. With regard to case plan services for Felicia, Hodge testified that LCCS provided Felicia with an opportunity to go into drug treatment and arranged for her to have an assessment. LCCS provided Felicia with bus tokens and transfers so she could attend drug treatment. Nevertheless, Felicia was discharged from the drug treatment program for her non-compliance and non-participation. LCCS then initiated a second drug treatment program for Felicia which she again did not complete. Felicia was also referred to Harbor Behavioral Health Care for individualized counseling and parenting classes. Although she did complete one thirteen-week group session of parenting classes, she ultimately did not comply with the case plan services. With regard to Felicia's need to find appropriate housing, Hodge stated that Felicia had said she was going to be moving into the Cherrywood Apartments. However, upon investigation, Hodge discovered that those apartments had no record of Felicia being on any waiting list. Hodge further testified that she had been unable to find any appropriate relatives for placement but that Aaron's current foster family, with whom one of his siblings also lives, had expressed an interest in adopting him. She then recommended that LCCS be awarded permanent custody of Aaron for purposes of adoptive placement.
Finally, Kenneth Sass, the guardian ad litem, gave his recommendation to the court. Sass stated that he had been involved with this family for over two years and has reiterated to Felicia the importance of meeting Aaron's basic needs, particularly with regard to education. Nevertheless, Felicia has not improved and Sass opined that Felicia does not care for the basic needs of Aaron. He therefore recommended that LCCS be awarded permanent custody of Aaron.
Based on this evidence, the lower court terminated Felicia's parental rights and granted permanent custody of Aaron to LCCS. On January 19, 1999, the court filed a judgment entry in which it found pursuant to R.C. 2151.353(A)(4) and R.C.2151.414(E)(4) and (11), by clear and convincing evidence, that Aaron cannot be placed or should not be placed with either of the parents within a reasonable period of time and that, pursuant to R.C. 2151.414(D) an award of permanent custody to LCCS is in Aaron's best interest. The court further found that LCCS made reasonable efforts to prevent the continual removal of Aaron from his home but that such efforts were unsuccessful. The court noted that said efforts included case plan management performed by the caseworker for approximately two years, referrals to community services and in-home family aide services. It is from that judgment that appellant appeals.
In her first potential assignment of error, appellant asserts that the trial court's findings of dependency and neglect were against the manifest weight of the evidence.
R.C. 2151.04 defines a "dependent child" as including any child:
 "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
"(D) To whom both of the following apply:
 "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
A "neglected child" includes any child:
 "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian:
 "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being[.]" R.C. 2151.03(A).
As this court stated in In re S. (1995), 102 Ohio App.3d 338,344-45:
 "The decision of a trier of fact relating to the adjudication of the children as neglected or dependent will not be overturned as against the manifest weight of the evidence, so long as the record contains competent credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for neglect or dependency have been established." (Citations omitted.)
This court has thoroughly reviewed the record of the proceedings below and, upon consideration thereof, finds that the trial court's conclusion that Aaron C. was dependent and neglected was supported by clear and convincing evidence. Appellant demonstrated a history of failing to assure Aaron's attendance at school for lengthy periods of time, would not take Aaron for medical appointments and could not maintain a home. In addition, appellant's parental rights to Aaron's two siblings had already been terminated.
Appellant's first potential assignment of error is therefore not well-taken.
In her second potential assignment of error, appellant asserts that appellee's failure to provide her with case plan services in the present case was prejudicial to her case.
It is well established that where a children services agency seeks original permanent custody of a child pursuant to R.C. 2151.353(A)(4), the agency is not required to establish a case plan. See In the Matter of: Misty B. (Sept. 17, 1999), Lucas App. No. L-98-1431, unreported; In the Matter of: StephanieH. (Sept. 17, 1999), Huron App. No. H-99-009, unreported. Rather, the court can "[c]ommit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." R.C.2151.353(A)(4). In the present case, although Aaron had previously been committed to the temporary custody of LCCS, he had been returned home to appellant. Subsequently, however, after receiving a referral, LCCS filed a complaint pursuant to R.C.2151.353(A)(4) seeking permanent custody of Aaron. The court then held the hearing required by R.C. 2151.414 and, based on the evidence adduced at that hearing, determined pursuant to R.C.2151.414(E)(4) that appellant demonstrated a lack of commitment to Aaron by her unwillingness to provide an adequate permanent home for Aaron, and by her consistent failure to assure the child attends to his educational needs. The court further found, pursuant to R.C. 2151.414(E)(11), that appellant caused or allowed Aaron to suffer neglect, and that two siblings of Aaron had previously been permanently removed from appellant's home because she neglected those children. In our view, these findings were supported by clear and convincing evidence. We further find clear and convincing evidence to support the trial court's conclusion that granting permanent custody of Aaron to LCCS is in the child's best interest.
Accordingly, appellant's second potential assignment of error is not well-taken.
Upon our own independent review of the record, we find no other grounds for a meritorious appeal. This appeal is therefore found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 Melvin L. Resnick, J. _______________________________ JUDGE
 James R. Sherck, J. _______________________________ JUDGE
 Mark L. Pietrykowski, J. _______________________________
JUDGE
CONCUR.